IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SABRINA GRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 16 C 9555 |
| v. | ) |
| | ) Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER[2]

Plaintiff Sabrina Gray applied for Social Security benefits on February 8, 2013, alleging she became disabled on November 7, 2012 (R. 206-15); her date last insured was December 31, 2016 (R. 14). Ms. Gray's application was denied initially and on reconsideration. After a hearing before an Administrative Law Judge ("ALJ"), the ALJ issued a written opinion denying Ms. Gray's claim for benefits (R. 14-23). The Appeals Council denied Ms. Gray's request for review of the ALJ's decision, rendering it the final decision of the Commissioner (R. 1). Ms. Gray has filed a motion to reverse and remand the ALJ's decision (doc. # 15), and the Commissioner has filed a cross-motion asking the Court to affirm the decision (doc. # 20). For the following reasons, we grant Ms. Gray's motion to remand and deny the Commissioner's motion to affirm.

I.

After working as a bus driver for the CTA for about 12 years, Ms. Gray stopped working on November 7, 2012, when she underwent arthroscopic surgery for a torn meniscus in her right

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2]On December 7, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 10).

knee (R. 36, 382, 267-69). Post-surgery, Ms. Gray participated in physical therapy (R. 407). In follow-up visits, her surgeon, James Schiappa, M.D., S.C., noted that Ms. Gray's range of motion and strength in her knee was improving (R. 331-38). However, in February 2013, Ms. Gray reported pain in her right knee and received another MRI, which showed moderate knee joint effusion (excess fluid on the knee), some degeneration of the knee, softening and instability of the patella (kneecap), as well as injury and instability in the medial femoral condyle (the rounded end of the thigh bone) (R. 497-98). That month, Ms. Gray also had imaging of her right hip, which showed mild narrowing and degenerative changes (R. 500), as well as an MRI of her left knee, which showed mild degenerative changes (R. 501). Nevertheless, on March 12, 2013, Dr. Schiappa wrote a note stating "return to duty 3-18-13" (R. 494).

On July 9, 2013, non-examining state agency physician, L.A. Woodard D.O., opined that Ms. Gray had the residual functional capacity ("RFC") to perform light work, sit for up to six hours a day, and stand and/or walk for up to six hours a day, with unlimited ability to lift, carry and stoop and the ability to frequently climb ramps/stairs, balance and crouch (R. 81-83). Dr. Woodard opined that Ms. Gray could work as a copy clerk, which she had done from 1995 to 2000 (R. 84-85). Dr. Woodard noted that his opinion conflicted with the June 25, 2013 opinion of the consultative examiner, Matthew Khumalo, who recommended a sedentary RFC for Ms. Gray after observing that she limped and walked with an antalgic gait, was unsteady walking heel to toe, was unable to hop or squat on her right leg, and had pain in her right shoulder and knee (R. 79).[3] Dr. Woodard's opinion was affirmed on reconsideration in December 2013 (R. 97-104).

---

[3]Dr. Khumalo's examination findings are listed in the discussion by the non-examining state agency physician who assessed Ms. Gray's RFC. The report of Dr. Khumalo's examination of Ms. Gray is not separately included in the record.

2

In July 2013, Ms. Gray sought medical treatment for continued pain in her right knee, as well as right wrist and low back pain (R. 440-42). The physician's assistant she saw, Jessica Kappes, recommended that Ms. Gray treat her symptoms with RICE (Rest, Ice, Compression and Elevation) in addition to taking pain medication, including hydrocodone (Vicodin) and gabapentin (Neurontin) (R. 443-45). Ms. Gray continued to complain of pain in August 2013, and at that visit, Ms. Kappes noted that Ms. Gray had developed diabetes (R. 474, 478). On November 22, 2013, returning to the same clinic, Ms. Gray reported daily, constant pain in her right knee which was not alleviated with Vicodin (R. 484). Ms. Kappes observed swelling, effusion, decreased range of motion, and diffuse tenderness in Ms. Gray's right knee (R. 484-87). Ms. Kappes prescribed Percocet (oxycodone-acetaminophen) instead of Vicodin, continued Ms. Gray's prescription for gabapentin, and recommended that Ms. Gray walk with a cane to alleviate her pain (R. 487-88). Ms. Kappes recommended an MRI of Ms. Gray's right knee, but Ms. Gray could not afford one at that time (R. 488).

On May 2, 2014, Ms. Gray visited her family medicine physician, Dr. Migdonia Delossantos, due to recurrent, severe right knee pain and to check up on her Type 2 diabetes (R. 531). Dr. M. Delossantos observed that Ms. Gray's right knee was tender, with restricted range of motion and minimal swelling (*Id.*). Ms. Gray returned to the doctor on July 8, 2014 because she was feeling sick; Dr. M. Delossantos noted that Ms. Gray had swelling and tenderness in her right knee, and she was taking Tramadol (a narcotic) for pain (R. 532). Dr. M. Delossantos's notes from Ms. Gray's visits in August and September 2014 did not mention knee problems (R. 534-36), but in October 2014, Ms. Gray again complained of knee pain, and Dr. M. Delossantos observed swelling and tenderness in her right knee and hand and reduced range of motion in those areas (R. 539, 542-43). That month, Dr. M. Delossantos filled out a physical capacities

3

evaluation, in which she opined that Ms. Gray could sit for five hours during an eight-hour day and stand or walk for a total of 30 minutes a day, and could only occasionally lift up to five pounds (R. 517-18). Dr. M. Delossantos also opined that Ms. Gray could not grasp, push or pull or do fine manipulation with her right hand (R. 517).

Also in October 2014, Ms. Gray visited doctor of podiatric medicine, Gregg Delossantos, D.P.M. (R. 551). At the visit, Ms. Gray complained of numbness in her feet, and Dr. G. Delossantos observed that she had decreased sensation on both feet, but the strength and range of motion in her feet was normal (*Id.*). On November 25, 2014, Dr. G. Delossantos diagnosed Ms. Gray with diabetic peripheral neuropathy (R. 549). He wrote that Ms. Gray's gait was guarded to altered, she needed a cane for balance and she could not walk or stand more than two hours in an eight-hour workday (R. 548-49). Dr. G. Delossantos further noted that Ms. Gray had moderate pain and decreased sensation in her feet (R. 550).

On January 12, 2015, Ms. Gray arrived at her hearing before the ALJ using a cane. She testified that she had used a cane for more than a year on the infrequent occasions when she left home because her right leg would lock up and/or go numb after 30 minutes of standing (R. 41, 44). She mostly sat around all day, but after about 30 or 40 minutes of sitting she needed to stand; she only drives short distances (R. 44, 46-47). Ms. Gray testified that she had not had knee replacement surgery because did not have insurance (R. 42).

The vocational expert ("VE") testified that Ms. Gray's previous work was defined as that of an office helper and a bus driver (R. 52). In response to the ALJ's hypothetical question, the VE testified that an individual would be able to work as an office helper if she could perform light work with unlimited sitting, standing and walking so long as she could switch positions for

4

five minutes every 60 minutes (R. 52-54). If the individual had to use a cane in their dominant hand to stand or walk, the VE stated that there would be additional limitations (R. 60).

## II.

On April 21, 2015, the ALJ issued a written opinion finding plaintiff not disabled through the date of the decision (R. 14). At Step 1, the ALJ found that Ms. Gray had not engaged in substantial gainful activity since November 7, 2012, the alleged onset date of the disability (R. 16). At Step 2, the ALJ found that Ms. Gray had the severe impairments of degenerative disease of the right knee and diabetes mellitus, but she did not have a severe mental impairment (R. 16-17). At Step 3, the ALJ did not find that Ms. Gray's impairments met or medically equaled the severity of a listed impairment (R. 17).

The ALJ found that Ms. Gray had an RFC to perform light work, with no limitations on the total amount of time she is able to sit, stand or walk throughout an eight-hour workday so long as she could alternate her position between sitting, standing, and walking for up to five minutes every hour while still on task (R. 17). In addition, Ms. Gray could frequently balance; occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; and never climb ropes, ladders or scaffolds (*Id.*).

The ALJ reviewed Ms. Gray's allegations of extensive pain and functional limitations as well as the opinions of Drs. M. and G. Delossantos assessing Ms. Gray with severe functional limitations, but the ALJ stated that Ms. Gray's allegations and these physician opinions were inconsistent with the medical record and thus not fully credible. The ALJ stated that the medical record showed "minimal swelling and only some tenderness of the right knee" and "consistently . . . full range of motion of the right knee," while it did "not show[] extreme complans of pain or even functional limitations" or "complaints of ongoing pain of the right knee" (R. 19-21).

5

Furthermore, the ALJ found that Dr. Schiappa's reports showed that "surgery was generally successful in relieving [Ms. Gray's] symptoms," she had "recovered from her surgery," and treatment records "indicate continued improvement in terms of limited findings on examination and conservative treatment" (R. 18-20).

The ALJ gave great weight to the opinion of Dr. Schiappa and his decision to release Ms. Gray back to work on March 18, 2013, because the ALJ stated that this was consistent with the medical evidence showing "mild to minimal findings of pain and swelling" (R. 21). The ALJ likewise gave great weight to the opinions of the State agency experts who opined that Ms. Gray could perform light work with postural limitations (R. 20-21). The ALJ did not mention Dr. Khumalo's examination.

The ALJ noted that in November 2014, Dr. [G.] Delossantos prescribed a cane for instability or nerve damage caused by peripheral neuropathy (R. 20). The ALJ considered awarding disability as of November 2014, but found that there were no ongoing complaints or examinations supporting this new diagnosis, and "there [wa]s no reason to believe that with appropriate treatment this impairment would last more than twelve months" (R. 20, 22).

At Step 4, the ALJ found that the plaintiff was not disabled because she was capable of performing her past relevant work as a copy clerk (R. 22-23). The ALJ noted that the copy clerk job was considered past relevant work because Ms. Gray performed it within 15 years of the hearing, but that as of May 2015 (less than a month after the date of the ALJ's opinion), the job would cease to be considered past relevant work (R. 22). Because of the Step 4 determination, the ALJ did not consider whether at Step 5 there were a substantial number of other jobs that Ms. Gray could perform with the RFC ascribed to her.

6

III.

We review the ALJ's decision deferentially to determine if it is supported by "substantial evidence," which the Seventh Circuit has defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016). "Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). Ms. Gray argues that the ALJ's opinion should be reversed and remanded for several reasons. We focus on Ms. Gray's arguments that the ALJ improperly constructed an RFC not grounded in medical evidence and failed to adequately assess Ms. Gray's physicians' opinions. We find that remand is necessary on these bases, and we do not reach Ms. Gray's additional arguments.

A.

The ALJ opined that Ms. Gray could perform light work, with no limitations on the total amount of time she was able to sit, stand or walk throughout an eight-hour workday as long as she could alternate her position between sitting, standing, and walking for up to five minutes every hour while staying on task (R. 17). However, none of the physicians in the record opined that Ms. Gray could sit, stand or walk without limitations during an eight-hour workday, or that alternating her position every hour would allow her to do so. The non-examining state agency doctor opined that Ms. Gray could sit up to six hours and stand and/or walk up to six hours in an eight-hour workday; this was in contrast to the opinion by Dr. Khumalo -- a state agency doctor who examined her -- that Ms. Gray was limited to sedentary work. Dr. M. Delossantos opined

7

that Ms. Gray was even more limited in that she could sit for only five total hours and stand/walk for only 30 minutes in an eight-hour workday. Dr. G. Delossantos restricted Ms. Gray even further, opining that Ms. Gray could only be on her feet for one to two hours during the workday.

As Ms. Gray points out, the RFC that the ALJ created requires Ms. Gray to be able to stand or walk or sit for a total of more than seven hours during an eight-hour workday (eight hours minus five minutes per hour) (Pl.'s Mem. at 10). "No physician testified—no medical records [re]vealed—that [Ms. Gray] has the residual functional capacity ascribed to h[er] by the administrative law judge." *Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013).

Where medical reports do not support the RFC which the ALJ gave the claimant, "[t]he ALJ needed to explain how []he reached h[is] conclusions about [the claimant's] physical capabilities." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Here, however, "the ALJ failed to do so, and '[t]he rest of the record simply does not support the parameters included in the ALJ's residual functional capacity determination.'" *Diehl v. Berryhill*, No. 16 C 4018, 2017 WL 2664137, at *4 (N.D. Ill. June 20, 2017) (quoting *Suide v. Astrue*, 371 Fed. App'x 684, 690 (7th Cir. 2010)). Thus, the ALJ failed to build the requisite "logical bridge" between the evidence and his conclusion that Ms. Gray was capable of the RFC he formulated.

### B.

In addition, the ALJ's decision to reject the opinions of Drs. M. and G. Delossantos was not supported by substantial evidence. The ALJ gave little or no weight to their opinions assessing Ms. Gray with extensive functional limitations due to her right knee problems. In support of his decision, the ALJ stated that these limitations were inconsistent with findings in the medical record showing minimal swelling and tenderness, full range of motion, continued

8

improvement since her November 2012 surgery, and no complaints of severe pain or functional limitations in her right knee (R. 19-21).

This explanation was inadequate because it ignored or misconstrued relevant evidence in the medical record. For example, in July and August 2013, Ms. Gray sought medical treatment for worsening pain in her right knee, and she was prescribed strong medication for her pain, including Vicodin, Percocet, and Neurontin. In November 2013, Ms. Gray reported daily, constant pain in her right knee, and Ms. Kappes observed that Ms. Gray had decreased range of motion, swelling, effusion and tenderness in her right knee -- which led her to recommend that Ms. Gray use a cane. In the fall of 2014, Dr. G. Delossantos likewise observed that Ms. Gray's gait was guarded to altered, and he noted that she required the use of a cane for balance.

The ALJ's failure to address this contrary evidence requires remand because "[a]n ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016); *see also Moore*, 743 F.3d at 1123 (the ALJ must confront evidence that does not support his conclusion and explain why it was rejected; ALJ cannot present only a "skewed version" of the evidence).

### C.

On remand, we suggest that the ALJ order a new state agency consultative examination and opinion for Ms. Gray. "An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009) (internal quotations omitted). An ALJ may order a consultative examination when "the evidence as a whole is insufficient to support a determination or decision on [the] claim," including where "[t]here is an indication of a change in [the claimant's] condition that is likely to affect [her] ability to work." 20 C.F.R. § 416.919a(b)(4).

Here, the ALJ rejected Dr. G. Delossantos's November 2014 diagnosis of diabetic peripheral neuropathy and associated limitations because at the time of the hearing in January 2015, the ALJ did not have enough evidence that this impairment would last more than twelve months (R. 20, 22). Instead, the ALJ gave great weight to Dr. Schiappa's much earlier March 2013 decision to release Ms. Gray back to work and to the non-examining state agency doctor's opinion from July 9, 2013, that Ms. Gray could perform light work and sit, stand or walk up to six hours in an eight-hour workday. In addition, while the non-examining state agency physician noted that Dr. Khumalo had performed a consultative examination of Ms. Gray in June 2013 and concluded that Ms. Gray was limited to sedentary work, the record does not contain a full report from this examination and the ALJ did not mention this examination or the examiner's conclusions. "In these circumstances, 'the ALJ on remand should strongly consider ordering another medical evaluation to determine' Ms. [Gray's] physical functional limitations." *Diehl*, 2017 WL 2664137, at *5 (quoting *Thomas v. Colvin*, 534 Fed. App'x 546, 551 (7th Cir. 2013)).

## CONCLUSION

For the reasons stated above, we grant Ms. Gray's motion to remand (doc. # 15) and deny the Commissioner's motion to affirm (doc. # 20). This case is remanded for further proceedings consistent with this opinion. The case is terminated.

ENTER:

Sidney I. Schenkier
**United States Magistrate Judge**

Dated: July 26, 2017